# CHICAGO WEST DIVISION RAILWAY COMPANY
## v.
## CHARLES A. HAVILAND.

1. INSTRUCTIONS—DUTY OF COURT.—Where instructions submitted by counsel are based upon the evidence, and announce correct propositions of law applicable to the case, in clear, concise and intelligible language, and are not argumentative nor misleading, nor repetitions of other instructions given, it is the legal duty of the court to give them.

2. WHERE THE NUMBER OF INSTRUCTIONS ARE UNNECESSARILY MULTIPLIED.—The fact that too many instructions are asked does not exempt the judge from the duty of examining any of them. He should pass upon and give or refuse as many instructions as the party asking them is reasonably entitled to. If, however, a judge refuses to examine any of the instructions given, but prepares and gives an instruction which states correctly all the legal propositions in the case upon which a party's counsel desired and were entitled to have the jury instructed, the party has no ground of complaint.

3. INSTRUCTION NOT BASED UPON EVIDENCE.—Where the only ground upon which plaintiff could recover was that the car driver was guilty of wanton and reckless misconduct, and the instruction left it to the jury to determine from the evidence whether "the car was being driven so rapidly as * * to show that the driver was wantonly and recklessly regardless of persons on the street." *Held*, that this instruction was erroneous, as there was no evidence upon which to base it.

4. INSTRUCTIONS—NEGLIGENCE.—Where the negligence with which the evidence tended to charge plaintiff was to be found mainly in his conduct before he saw the danger, *i. e.*, in his standing in the street waiting for a car without looking or listening or taking any precaution to ascertain

whether danger was approaching or not, until it was too near for him to escape, an instruction upon the question of plaintiff's negligence which limited the jury to the consideration of plaintiff's conduct after he saw his danger was erroneous. The attention of the jury should have been directed to his entire conduct on the occasion, as well before as after he discovered the car approaching.

5. NEGLIGENCE.—The fact that plaintiff was an old man and laboring, presumably, under the infirmities of old age, was a material circumstance bearing upon the question of his contributory negligence, and should be considered by the jury in determining whose negligence caused the injury.

6. VERDICT EXCESSIVE.—Giving the evidence for plaintiff all the weight that can legitimately be claimed for it, his injury is not shown to have been of such a character as to justify a recovery of $10,000.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed March 27, 1883.

This was an action on the case, brought by Charles A. Haviland, against the Chicago West Division Railway Company, to recover damages for an injury received by the plaintiff by being run against and thrown down by the horses drawing one of the cars on the defendant's railroad. The declaration, which consists of but one count, alleges, that on the 1st day of March, 1880, the defendant was using and operating a railroad on Randolph street, in the city of Chicago, and running cars thereon for the conveyance of passengers; that on said day, the plaintiff was rightfully passing across and upon said street, while the defendant, by its servants, was running one of its cars along the same, and that while the plaintiff was so rightfully passing across and upon said street, with all due care and caution, the defendant, by its said servants, so carelessly and improperly drove, conducted and controlled said car and the horses thereto attached, that by and through the carelessness, gross negligence and improper conduct of the defendant, by its said servants in that behalf, the said car then and there struck the plaintiff, whereby the plaintiff was then and there thrown with great violence to and upon the ground and thereby received the injury complained of.

The evidence shows that, on said 1st day of March, 1880, at between five and six o'clock in the afternoon, the plaintiff

left his place of business on Madison street between Fifth avenue and Franklin street and went west to Franklin street and thence north to Randolph street, where he intended to get on to one of the defendant's cars running to the west part of the city, where he then resided. The defendant has two street car tracks on Randolph street, the northerly track being used by cars running west and the southerly track by cars running east, the space between the two tracks being about four feet. On reaching Randolph street, the plaintiff stopped and stood near the east side of Franklin street, with his face to the east, looking and waiting for a car going west. According to his testimony, the place where he stood was between the two tracks, but according to the testimony of the other witnesses, it was some three or four feet south of the southerly track. By the defendant's rules, cars going west were permitted to stop at street crossings only on the westerly side of the street crossed. The plaintiff admits that he knew that such was the defendant's usual practice, and knew the car would not stop for him where he was standing, but that he expected to get on to it while in motion.

The plaintiff was a man over seventy years of age, and the evidence shows that, at the time, his hearing was very considerably impaired. While standing, waiting for a car, as he admits, he did not look to the west, nor does he appear to have taken any other precaution to ascertain whether a car was approaching, until he heard the voice of the car driver warning him to get out of the way. He then turned his head, and seeing the horses very near him, attempted to get away, as he testifies, by running in front of the horses over to the southerly side of the track, and in so doing, was struck on his left hip by the right hand or southerly horse, and thrown down and injured. According to the testimony of the car driver and also of a passenger who, at the time, was riding on the platform of the car, the plaintiff, as the car was approaching, stood three or four feet south of the track. At the same time a wagon was approaching him from the east. Just as the horses drawing the car reached him, he suddenly stepped toward the horses, apparently to get out of the way of the wagon, and struck against the horse and was thrown down.

The evidence as to the rate of speed at which the car was moving at the time the plaintiff was injured was substantially as follows: The plaintiff himself testifies that the car was being driven rapidly, but he admits that as his back was toward the car, he was not in a position to see how fast or how slow it was moving. One of the plaintiff's witnesses testifies that it was going rather fast, faster than usual, but declines to give the rate of speed. Another of his witnesses testifies that it was going at a pretty good rate, neither fast nor slow, but at the usual rate of speed. On the other hand, both the car driver and the witness who was standing with him on the front platform of the car, both testify that while passing over Franklin street the horses were walking.

The evidence shows that the plaintiff was confined to his bed for several months and that his injury consisted of some serious impairment of the bones of his left hip, causing a shortening of his leg of between one and two inches, and rendering him permanently lame.

Thirteen instructions were asked for the plaintiff, and nineteen for the defendant, all of which the court refused to examine or give, on the ground that their number and length were, in the opinion of the court, unreasonable, but the court thereupon gave to the jury on his own motion the following instruction:

"The only ground upon which the plaintiff can claim a verdict in his favor is, that the east going car spoken of by the witnesses, was being driven at a rate of speed so dangerous as to indicate a gross and reckless disregard of the safety of persons in the street. The plaintiff had no right to impose upon persons driving on the street the risk which he incurred in standing there. But still he did not take upon himself the risk that persons driving on the street would do so at a dangerous and reckless rate of speed in disregard of the safety of persons who might be upon the street.

"So, unless the jury believe, from the evidence, that the car was being driven so rapidly as to be dangerous to others, and as to show that the driver was wantonly and recklessly regardless of the safety of persons who might be on the street, the

plaintiff can not recover; and if they do so believe from the evidence, and that but for such rapid driving the plaintiff would not have been injured, and that such rapid driving was the cause of the injury, by striking him with the car, and that he could not by any exertion that could be reasonably expected of him, after he saw his danger, have avoided the injury, then the plaintiff may recover such damages as are a fair compensation for his bodily injury, past, present and future pain and loss of time, and expenses necessarily incurred in the endeavor to be cured, so far as the same are the result of the injury complained of.

"The accident itself is no evidence that the company was in fault. The plaintiff's position, standing in the street, was one which exposed him, at his own risk, to danger, and before he can recover he must prove to the jury, by a preponderance of all the evidence in the case, that his injury was caused by a rapid, dangerous and reckless driving of the car. And the jury should determine the question from the evidence, without regard to the facts that the plaintiff is an old man and the defendant a corporation, and no vituperation and denunciation of witnesses should have any effect with the jury, but they should find their verdict in accordance with what they believe from the evidence to be the truth."

Proper exceptions to the decisions of the court in giving and refusing instructions were preserved, and thereupon the jury rendered their verdict by which they found the defendant guilty, and assessed the plaintiff's damages at $10,000, for which sum and costs the court, after denying the defendant's motion for a new trial, gave judgment for the plaintiff.

Since the record has been brought to this court by appeal, the plaintiff has died, and the appeal is now being prosecuted by his legal representative.

Messrs. WM. H. & J. H. MOORE, for appellant; that appellee did not use due care and caution, cited C. R. I. R. R. Co. v. Still, 19 Ill. 509; I. C. R. R. Co. v. Buckner, 28 Ill. 302; S. P. & W. R'y Co. v. Riley, 47 Ill. 515; R. R. I. & St. L. R. R. Co. v. Byam, 80 Ill. 528; L. S. & M. S. R. R. Co. v.

Sunderland, 2 Bradwell, 307; L. S. & M. S. R. R. Co. v. Clemens, 5 Bradwell, 77; C. B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; Galpin v. Third Ave. R. R. Co. 40 N. Y. 185; Adolph v. C. P. N. & E. Riv. R. R. Co. 70 N. Y. 530; C. W. D. R. R. Co. v. Bert, 69 Ill. 388.

Special damages must be alleged: C. W. D. R'y Co. v. Klauber, 9 Bradwell, 613; Baldwin v. West. R. Co. 4 Gray, 333; Quincy Coal Co. v. Hood, 77 Ill. 68.

The verdict is the result of passion and prejudice, and not based on the evidence: I. C. R. R. Co. v. Welch, 52 Ill. 188; C. B. & Q. R. R. Co. v. Hazzard, 29 Ill. 373; C. & R. I. R. R. Co. v. McKean, 40 Ill. 243; C. W. Div. R'y Co. v. Hughes, 87 Ill. 94; Chicago v. Martin, 49 Ill. 246; Peoria B. A. v. Loomis, 20 Ill. 235.

It was error to instruct the jury that plaintiff might recover if he used due care "*after he saw*" his danger: C. B. & Q. R. R. Co. v. Colwell, 3 Bradwell, 549; C. & N. W. R. R. Co. v. Clark, 2 Bradwell, 123.

It is error to single out certain facts and ignore others of equal importance: L. S. & M. S. R. R. Co. v. Berlink, 2 Bradwell, 427; St. L. A. & T. H. R. R. Co. v. Pflugmacher, 9 Bradwell, 301.

Mr. J. BLACKBURN JONES, for appellee; that the fact that the court failed to mark the instructions, will not justify a reversal, cited Calef v. Thomas, 81 Ill. 478.

To decide questions of fact is the special province of the jury: Burkett v. Bond, 12 Ill. 87; G. & C. U. R. R. Co. v. Dill, 22 Ill. 264; S. P. & W. R'y Co. v. Foster, 43 Ill. 415; Centralia v. Scott, 59 Ill. 129; Rockford v. Hildebrand, 61 Ill. 155; I. C. R. R. Co. v. Gillis, 68 Ill. 317.

As to the measure of damages: Hunt v. Hoyt, 20 Ill. 544; Peoria Bridge Co. v. Loomis, 20 Ill. 235; Drohn v. Brewer, 77 Ill. 280; Jasper v. Purnell, 67 Ill. 358.

Verdict should not be disturbed unless it is probable that the jury acted under the influence of passion or prejudice: Schenker v. Risley, 3 Scam. 483; I. & St. L. R. R. Co. v. Cobb, 68 Ill. 53; I. C. R. R. Co. v. Hammer, 72 Ill. 347.

C. W. D. R'y Co. v. Haviland.

As to instructions: Bissell v. Curran, 69 Ill. 20; Gusick v. Campbell, 68 Ill. 508.

Bailey, P. J.   We think the court below erred in refusing to give or even to examine any of the instructions asked on behalf of the defendant.   The statute requires that all instructions to the petit jury be reduced to writing; and that the judge, when instructions are asked, write "Given" on the margin of such as he approves, and "Refused" on the margin of such as he can not give.   This statute of course contemplates the preparation of instructions by counsel, and it has accordingly been the practice, recognized and enforced by a long line of judicial decisions, to give to the jury such instructions as may be submitted by the respective counsel, provided they are based upon the evidence, and announce correct propositions of law applicable to the case, in clear, concise and intelligible language, and are not argumentative nor misleading, nor a repetition of other instructions given.   Where instructions of this character are asked, it is the legal duty of the court to give them.

There is doubtless a limit to the number of instructions which a party has a right to require the court to give.   This follows from what has already been said, since the number of distinct legal propositions arising in any one case is necessarily limited.   But as to every proposition of law actually involved, the statement of which would in any way aid the jury in the performance of their functions, a party has an undoubted right to have the jury properly instructed.

This privilege of asking instructions is of course liable to abuse.   Their number may be unnecessarily multiplied, thus imposing upon the judge a useless burden if he undertakes to examine them all, and confusing rather than aiding the jury, perhaps, if they are given.   But we are unable to perceive how the fact that too many instructions are asked, exempts the judge from the duty of examining any of them.   He may, perhaps, after duly considering a reasonable number, decline to proceed farther, but he should pass upon and give or refuse as many instructions as the party asking them is reasonably entitled to.

The judge, it is true, gave, in this case, an instruction prepared by himself, and if that instruction had stated to the jury correctly all the legal propositions arising in the case upon which the defendant's counsel desired to have them instructed, the defendant would have had no ground of complaint. This, however, it did not do. Various material propositions upon which the defendant had a right to have the jury instructed were omitted; and as to those matters the jury were compelled to find their verdict without instructions.

But we think the instruction given by the court, was itself obnoxious to serious criticism. After holding that the only ground upon which the plaintiff could recover would be, that the car driver was guilty of wanton and reckless misconduct, the instruction left it to the jury to determine from the evidence whether " the car was being driven so rapidly as to be dangerous to others, and as to show that the driver was wantonly and recklessly regardless of the safety of persons on the street." We have examined the record with care, and fail to find any evidence upon which this portion of the instruction could be based. The misconduct to which the attention of the jury was here called, related merely to the rate of speed at which the car was being driven. On this subject we have the testimony of the plaintiff and four other witnesses. Of these, the plaintiff testifies merely that the car was being driven rapidly, but does not attempt to indicate more definitely the rate of speed. His own admissions, however, as well as the other evidence in the case, show conclusively that he neither saw nor heard the car or horses, until they were within a few feet of him, and that his testimony as to the rate of speed is wholly unreliable. Of the remaining four witnesses, two, the driver and man who was riding with him on the platform, testify that the horses were walking. Another testifies that the car was going neither fast nor slow, but at the usual rate. The fourth testifies that it was going faster than usual, and in another place, that it was going very fast, but confesses his inability to give the rate of speed, and furnishes us with no data from which the rate can be estimated even approximately. Now, even if we take the testimony of the last men-

C. W. D. R'y Co. v. Haviland.

tioned witness as true, it comes far short, when all his testimony so preserved by the record is considered together, of showing that the driver was "wantonly and recklessly regardless of the safety of persons on the street." He may have driven faster than usual, or at the rate which the witness sees proper to term "very fast," without being liable to the imputation of general malice toward the public. This portion of the instruction, then, having no evidence to support it, should not have been given.

The theory of the instruction doubtless was that the evidence conclusively showed the plaintiff to have been guilty of a want of ordinary care, and therefore that the only ground upon which a recovery was possible, was proof of such wanton and reckless misconduct on the part of the car driver as would raise a legal presumption that the plaintiff's injury was wilfully inflicted. The assumption that the plaintiff was guilty of a want of ordinary care, was, in our opinion, justified by the evidence. The conclusion drawn from this assumption that the plaintiff could recover only upon proof that the injury was willful, was doubtless correct. Upon these propositions the jury must be deemed to have been guided by the instruction; and their verdict must be held to be a finding that the car driver was shown by the evidence to have been wantonly and recklessly regardless of the safety of persons on the street. Such finding is not only against the clear preponderance of the evidence, but is wholly without evidence, and should for that reason have been set aside.

The instruction also, in submitting to the jury the question of the plaintiff's negligence, limits them to a consideration of his conduct after he saw his danger. The negligence, however, with which the evidence tends to charge him, is to be found mainly in his conduct before he saw his danger. It consisted in standing where he did without looking or listening, or taking any other precaution to ascertain whether danger was approaching. As he himself testifies, he was not thinking of danger until it was too near for him to escape. The attention of the jury should have been directed to his entire conduct on the occasion, and they should have been

permitted to consider his conduct as well before he discovered the approach of the car and horses, as after.

In determining this question also, the jury were instructed to disregard the fact that the plaintiff was an old man. This, too, was error. The fact that he was an old man, and laboring, presumably, under the infirmities of old age, was a material circumstance bearing upon the question of his contributory negligence, and it should therefore have been considered by the jury in determining whose negligence caused the injury.

We are furthermore of the opinion that the amount of the verdict was excessive. Giving the evidence for the plaintiff all the weight that can be legitimately claimed for it, his injury is not shown to have been of such a character as to justify a recovery of $10,000. Many cases are to be found in this State where even smaller verdicts for injuries equally severe have been set aside by the Supreme Court as excessive. With precedents of that character before us, we can not permit this verdict to stand.

For the various errors above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.